SIGMON FURNITURE MFG. CO. v. MASSEY.

No. 30656.  May 11, 1943.

*137 P. 2d 793.*

Roger L. Stephens and Ted Foster, both of Oklahoma City, for plaintiff in error.

J. D. Lydick, of Oklahoma City, for defendant in error.

OSBORN, J. This action was instituted in the district court of Oklahoma county by G. E. Massey, hereinafter referred to as plaintiff, against the Sigmon Furniture Manufacturing Company, hereinafter referred to as defendant, wherein plaintiff sought recovery upon an oral contract of settlement of a claim whereby he was guaranteed payment of the sum of $297. It was alleged that the contract was made in behalf of defendant corporation by C. T. Sigmon, the president and managing officer of the corporation, at a time when the corporation was in bankruptcy. Issues were joined, the cause was tried to a jury, and a verdict was entered in favor of plaintiff. From a judgment on the verdict, defendant has appealed.

Defendant is a corporation engaged in the wholesale furniture business. On December 27, 1927, the corporation floated a bond issue of $175,000, which bonds were secured by a deed of trust mortgage wherein the Mississippi Valley Trust Company of St. Louis, Mo., was trustee. Plaintiff was the owner and holder of bonds of this issue of the face value of $13,500. In May, 1931, in an action pending in the Federal District Court, one B. C. Housel was appointed receiver for defendant corporation. The receivership continued until the fall of 1937 when a proceeding was commenced under the Bankruptcy Acts for effecting a plan of reorganization, and Housel was appointed trustee in the bankruptcy reorganization proceeding.

Prior to July 30, 1938, defendant filed in the bankruptcy case a plan for reorganization and composition with its creditors, wherein it was provided that there was "to be paid to the holders of the first mortgage bonds the sum of 61 cents on the dollar." It was proposed, in said plan for composition, that an organization known as the "Bondholders Committee" should be paid, as fees and expenses for representing the bondholders in the bankruptcy proceeding, a sum equal to $22 for each thousand dollars of the outstanding bonds. The plaintiff Massey contended that said committee had not represented him and therefore no portion of said fees and expenses should be charged against the amount payable to him. The theory upon which plaintiff relies for recovery is stated in his petition as follows:

". . . During the later part of December, 1938, or the first ten days of January, 1939, the exact date now being unknown to him, and in order to compromise and settle the claim and contention he made as aforesaid it was agreed by and between him and the defendant company that if he would accept said sum of $7,456.75 and forego his right to appeal to the court in said cause No. 77034 for a modification and correction of its order of distribution, or an interpretation thereof, and an appeal to the Circuit Court of Appeals, if he failed in such an effort in the lower court or the judgment thereof was adverse to the contention he then made, and if he would do nothing to delay or hinder the adjudication of the case necessary in the complete reorganization of the defendant company (and which complete reorganization did subsequently follow) that it would compromise and settle his claim by agreeing to pay said sum of $297 if he was not paid by the said Mississippi Valley Trust Company or Bondholders' Protective Committee within one hundred twenty days from February 4, 1939."

Plaintiff further alleged that the settlement and compromise was verbal and was made between plaintiff and C. T. Sigmon, president and manager of de-

fendant corporation, and the attorney for said corporation; that a written memorandum of the agreement was made on February 4, 1939, which was attached to the petition as Exhibit A.

The memorandum referred to is a letter dated February 4, 1939, from defendant's attorney to the plaintiff wherein it is stated that:

"Agreeable with my telephone conversation with you this morning, I am writing to advise you that Sigmon Furniture Manufacture Company will guarantee you the payment of the above amount ($297.00) not later than one hundred twenty days from this date."

As the first proposition for reversal of the judgment, it is contended that the contract sued on was an illegal contract proscribed by the statutes of the United States. Attention is directed to Title 11, U.S.C.A. § 52, (b), which in part, provides:

"A person shall be punished by imprisonment for a period of not to exceed five years or by a fine of not more than $5,000, or both, upon conviction of the offense of having knowingly and fraudulently . . . received or attempted to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof from any person, for acting or forbearing to act in any proceeding under this title; . . ."

15 O. S. 1941 § 211, provides, in part, as follows:

"Those contracts are unlawful which are:

"1. Contrary to an express provision of law.

"2. Contrary to the policy of express law, though not expressly prohibited; . . ."

We have repeatedly held that our courts will not enforce or aid in the enforcement of a contract made in violation of law nor grant relief at the instance of a plaintiff who, in order to prevail, is compelled to rely upon an illegal contract. Crawford v. McConnell, 173 Okla. 520, 49 P. 2d 551, and authorities therein cited.

Defendant contends that we are precluded from giving consideration to the question of illegality of the contract for the reason that the question was not presented to the trial court, but it is the rule in this jurisdiction that the question is one which the court itself is bound to raise in the interest of the due administration of justice. See Hunt v. W. T. Rawleigh Medical Co., 71 Okla. 193, 176 P. 410, following Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539, and the numerous other authorities. Here the pleadings of plaintiff disclosed the illegality of the agreement.

A question somewhat similar to the question presented in the instant case was before the Supreme Court of Missouri in the case of Crandall v. Durham, 348 Mo. 240, 152 S. W. 2d 1044. The action was upon a promissory note given by defendant, upon consideration that plaintiff would not present a claim in bankruptcy, and would not oppose defendant's discharge in bankruptcy. Therein it was said:

"At the time of defendant's bankruptcy proceedings, the bankruptcy law provided that: 'A person shall be punished by imprisonment for a period of not to exceed five years upon conviction of the offense of having knowingly and fraudulently . . . received or attempted to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof from any person, for acting or forbearing to act in bankruptcy proceedings . . . 44 St. at L. p. 665, sec. 29, sub. b (5), 11 U.S.C.A. sec. 52; 9 Remington on Bankruptcy p. 917. Plaintiff's pleaded agreement to forbear opposing defendant's discharge in bankruptcy was contrary to the declared public policy, a fraud upon the act and unenforceable. Consult, among others, Smith v. Langmaack, 60 N. D. 66, 232 N. W. 600; Meyer v. Price, 250 N. Y. 370, 165 N. E. 814, 817 et seq."

In the case of Meyer v. Price, supra, it was said:

"Any arrangement in consideration of a creditor's withdrawal of his opposition to a bankrupt's discharge was illegal as against public policy and the

salutary purposes of the insolvent or bankruptcy laws. (citing authorities) . . . .

"All agreements, however, by a bankrupt to pay a creditor in full, are not illegal. The illegality exists in the creditor undertaking to refrain from making some move in the bankruptcy proceedings or to withdraw from some action already taken which may impede or prevent the discharge of the bankrupt. The law desires and encourages a full and free exposure and revelation of all the bankrupt's acts, conduct and property. Any agreement whereby a creditor undertakes to keep silent or inactive when his word or deed might assist the purposes of the bankruptcy proceedings is illegal."

In the case of Smith v. Langmaack et al., 60 N. D. 66, 232 N. W. 600, the court held:

"Section 29b (5) of the National Bankruptcy Act, as amended by the Act of May 27, 1926, sec. 11, (11 U.S.C. A. sec. 52(b) (5), makes it a penal offense, punishable by imprisonment for a period of not to exceed five years, for a person to knowingly and fraudulently receive or attempt to obtain any money or property from any person for forbearing to act in bankruptcy proceedings; therefore, a note given by the bankrupt and his wife to a creditor who had appeared to contest the bankruptcy proceedings, upon the agreement on the part of that creditor to refrain from any further action in the bankruptcy proceedings and to cease his attempt to prevent the discharge in bankruptcy, is unenforceable between the parties, even though the note represents the amount due the payee from the bankrupt upon valid judgments scheduled as liabilities."

We quote further from the body of the opinion:

"It is true the section of the present Bankruptcy Law under consideration, section 29b (5), as amended, does not, in express terms, say that such a contract is void; but it makes it a penal offense to enter into such a contract. In Wiggin v. Bush, 12 Johns. (N.Y.) 306, 7 Am. Dec. 324, it is held that 'a note given by an insolvent debtor to a creditor, in consideration that the latter should withdraw his opposition to the debtor's obtaining his discharge, is void.' This is based, not upon a special statutory provision making it void, but upon the general principle that the policy of the law and the spirit of the statute forbids such transactions. Such a transaction is a fraud, and the note was obtained 'knowingly and fraudulently' by methods forbidden."

Although the issues of law and fact involved in the cited cases are not identical to the issues presented herein, they are expressive of the policy and purpose of statutes enacted to prevent the obtaining of advantage by acting or forbearing to act in bankruptcy proceedings. The statute, in effect at the time of the alleged oral contract involved herein, made it a criminal offense to receive or obtain money, property, compensation, reward, advantage, or promise · thereof, for acting or forbearing to act in a bankruptcy proceeding. The consideration for the oral contract to guarantee payment of plaintiff's claim is stated in his petition. He alleged that said promise was made upon consideration that he forego his right to appeal to the court for modification and correction of the order of distribution and his right to appeal to the Circuit Court of Appeals if the judgment of the lower court was adverse to his contention, and that he would do nothing to delay or hinder the adjudication of the case necessary to the complete reorganization of defendant company. Since it was made a criminal offense for plaintiff to secure an advantage on account of his forbearance to assert his claims and contentions before the court, it follows that the contract sued upon is unlawful and unenforceable.

Having taken this view of the matter, it is unnecessary to consider other propositions of law presented and argued in the briefs.

The judgment is reversed and the cause remanded, with directions to enter judgment in favor of defendant.

CORN, C. J., GIBSON, V. C. J., and WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.